**PEMASA AFEMATA, for himself and on behalf of the AFEMATA FAMILY, Plaintiffs**

**v.**

**FAGA PASA, Defendant**

High Court of American Samoa
Land and Titles Division

LT No. 24-92

February 8, 1994

Before RICHMOND, Associate Justice, VAIVAO, Associate Judge, and
AFUOLA, Associate Judge.

Counsel: For Plaintiffs, Afoa L. Su'esu'e Lutu
 For Defendant, Charles V. Ala'ilima

Opinion and Order:

Plaintiff Pemasa Afemata ("Afemata") brought this action, for himself
and the Afemata family, to permanently enjoin defendant Faga Pasa
("Faga") from constructing a house on certain land in the Village of
Alao, American Samoa.

The court approved the parties' stipulation to permit construction of the
house and to let the court decide after trial whether the house would
remain or be removed from the land. The parties were also mutually
enjoined from interfering or harassing each other. However, certain
persons allegedly interfered with Faga's survey. One, Taua Efi
("Taua"), was then joined as a necessary party. He agreed to allow the
survey to continue. He failed to defend, though, and trial proceeded
without his participation.

Trial began on September 29, 1993, and testimony was concluded on
September 30, 1993. Afemata and Faga were personally present with
counsel on both days. The parties were advised that the court desired to
inspect the land and surrounding area. This was done on December 8,
1993.

Alao is located at the eastern end of the Island of Tutuila. Its principally
populated part is situated along the ocean shoreline. The disputed Faga
house is located westward, north and east of streams flowing from the
nearby mountains, in a small, inland valley. The area south and west of
the streams rises steeply within a short distance. The area is accessed
from the east by a dirt road beginning in populated Alao and ending at
an undisputed Afemata family house. As the road reaches the area, it
connects with another dirt road leading to a house occupied by a daughter
of Faga and her family. The disputed Faga house is located near this
intersection towards the stream at the south end of the area.

The boundaries of Afemata's survey of 1.2364 acres, more or less, which the American Samoa Government approved for registration on September 21, 1992, encompasses the Afemata house and disputed Faga house and runs through Faga's daughter's house. The boundaries of Faga's survey of 0.5385 acres, more or less, which the Government approved for registration on September 29, 1993, generally follow the streams at the south and west ends of the land and parallel, a short distance below, the road to the Afemata house along the north side. The eastern boundaries are substantially the same in both surveys. The two surveys create a triangular-shaped overlap below the Afemata house, enclosing the disputed Faga house and a portion of Faga's daughter's house.

■ Considerable hearsay testimony was offered, not only by Afemata and Faga, but also by Taua family members, other than Taua himself, on the long-term historical use of the disputed land and nearby surrounding area. Other Alao elders contributed their memories as well. By its detail, Faga's discourse on these matters was the most impressive of these recitations. However, while hearsay evidence of family histories and traditions is admissible in communal land disputes, such evidence must always be viewed with caution. *See Tupuola v. Moali'itele*, 1 A.S.R.2d 80, 81 (App. Div. 1983).

In this case, when compared to each other, these historical compilations standing alone were essentially inconclusive. The three families, Afemata, Faga and Taua, have long occupied and used this general area, and each family has apparently included the area of the disputed house within its domain at one time or another. Agreements have been reached and modified on their families' respective rights in the area. The three families are also interrelated by marriages. Additionally, family members have left and returned. We can not definitely discern from this evidence alone rights ripening into title to the land under and immediately surrounding the house at issue. Rather, these histories do indicate confusion and misunderstanding among living family members and others about the persons who, in the past, worked the land and what authority permitted them to do so.

Faga's history is corroborated by recent, actual occupancy and use of land immediately adjacent to the disputed house. Unquestionably, Faga's family has been there continuously since at least 1982, without strenuous objection by Afemata and without any objection by Taua. Faga's daughter's house, now potentially bisected, is there. Construction of this house began in 1982 and was completed in 1984. It also consists of the

primitive road leading to this house and cultivation by the Faga family.

During 1982, Faga pointed out to another Afemata the boundary between the Afemata and Faga lands, as was shown to Faga by his father and is depicted in Faga's survey. Afemata disputed this second Afemata's authority to accede to this demonstration. Afemata stated that he was invested with the Afemata title in 1974 and that the second Afemata, who died in 1984, was unregistered and recognized by the family solely to handle family affairs but not to enter land agreements, except with his consent, during his extended, medical absences from American Samoa. He further stated that while away he learned of the Faga family's presence on the land but knew nothing of the boundary discussion with the second Afemata until the time of trial. However, Afemata waited until he returned, after the house was built, to raise the issue with Faga, at which time he claimed to have agreed to let this house remain. From his perspective, Faga continued with unauthorized uses, such as the house now in dispute, whenever he was absent, and the present litigation became necessary.

We are unpersuaded by Afemata's effort to establish that the Faga family's presence on the land was by his sufferance. We are convinced that their presence corroborates Faga's history of the land and was by right of title.

The physical features of the area further corroborate the Faga family's history of the title to the land. Development of the land west and south of the streams is restricted by the steeply ascending rise of the mountains. The area east and north of the streams is relatively level and large enough to accommodate usage by the Afemata, Faga and Taua families. We are satisfied that these natural characteristics were recognized by the three families long ago when they mutually established areas for each family's use.

We conclude that the Faga house in dispute is on the Faga family's communal land. This house shall remain on the land as Faga property.

It is so ordered.